**PARKER, a. k. a. J. L. PALKER, Plaintiff-Appellee, v. FRIENDT, now MARY RICCHETTI, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22944.   Decided March 10, 1954.

292

McDonald, Hopkins, Hood & Hardy, Cleveland, for defendant-appellant.

Steven W. Kormendy, Cleveland, for plaintiff-appellee.

**OPINION**

By KOVACHY, J:

This cause had its inception in the Municipal Court of Cleveland where plaintiff-appellee obtained a judgment by confession on a cognovit note signed by defendant-appellant. The judgment was satisfied through garnishment proceedings. Defendant thereafter filed a petition to vacate the judgment and was permitted to file an answer and cross-petition. The issues thus joined were tried to a jury which brought a verdict in favor of plaintiff on the petition and the cross-petition. On such verdict, judgment was rendered by the court. Upon appeal to this court, the judgment was reversed and the cause remanded for further proceedings. The jury, in the second trial, again brought in a verdict for the plaintiff on the petition and the cross-petition on which judgment was rendered and the appeal on questions of law from this latter judgment is now before us.

Plaintiff's petition in substance alleged that $1600.00 with

interest was due from defendant on a certain promissory note, attached to and made a part of the petition, which the defendant had failed to pay according to its terms and conditions.

The defendant in her answer denied that she was indebted to the plaintiff on the promissory note in any sum whatsoever and further said that without denying that the signature on said alleged promissory note was her own, denied that she placed it on the paper with the knowledge that the same was a promissory note to pay the plaintiff the sum of $1600.00 or any other sum. She plead further that the note was wholly without consideration and that the obtaining of it by plaintiff from defendant was fraudulent and void.

Defendant's cross-petition set forth in detail the court proceedings culminating in the satisfaction of the original judgment and then reiterated the claims made in the answer and prayed "that the judgment obtained by the plaintiff against defendant as aforesaid, be vacated and held for naught and that plaintiff's petition be dismissed and that defendant be awarded a judgment on her cross-petition in the amount of $2092.95 with interest at six percent from June 6, 1950, together with costs of this action."

Plaintiff filed a reply denying defendant's claims in her answer and cross-petition.

We have read the bill of exceptions carefully. Plaintiff testified that he advanced $1600.00 to defendant to purchase a piece of land with two houses. He introduced an official bank check made out to him as payee in the amount of $1475.00, and endorsed by him and the defendant, which check admittedly was deposited in the real estate transaction. He also introduced a purchase agreement signed by him on behalf of defendant, which verified his claim that he made a cash deposit. Defendant, on cross-examination, admitted that the signature on the note was her signature. Plaintiff's counsel testified that the note was filled out in his handwriting in his law office in the presence of both plaintiff and defendant and that defendant then and there signed the same with his pen. On sight, the ink of the filled in matter and the signature seem uniform in body and color.

The defendant in her defense said that plaintiff had cashed some of her pay checks and had kept money owing to her which was repaid in the house transaction, he saying at the time "well, you take the money that you have and the little bit more that you need I will put to it because I owe you that much." She then explained this claimed remark by saying "for coming in every day to spend his time there," the two apparently having carried on a close friendship for years

despite the marriage status of plaintiff and his four children.

To bolster this claim, however, defendant was able only to produce two paychecks in the aggregate sum of $90.65 which she claimed were cashed by plaintiff for her.

Defendant further testified that at the time the note was signed by her it was not filled out and that plaintiff told her he wanted her to give him a receipt to show that he did not owe her any money so if he and her daughter should come to live with her, if anything should happen to her, her daughter couldn't turn around and sue him for any money that belonged to her; urged her to "sign this" when she went to get her receipt book, and said "so why bother filling it out. I will just keep it in case I ever have to have it" when she suggested "making it out."

Plaintiff admitted cashing some of her checks but claimed that in all instances it was a mere accommodation and vehemently denied that he had ever kept any money belonging to her.

The note signed by defendant was of the printed form variety. The printed matter was as follows:

COGNOVIT NOTE

"$_____           Cleveland O. _____ 194__ ____ promise to pay to the order of _____ _____ **Dollars** with interest at the rate of _____ percentum per annum, at _____ and hereby authorize any attorney at law to appear in any court of record in the United States after the above obligation becomes due and waive the issuing and service of process and confess a judgment against —— in favor of the holder hereof, for the amount then appearing due, together with costs of suit and thereupon to release all errors and waive all right of appeal.

_____ Seal

No _____

_____ Seal

Due _____

_____ _____ Seal"

We believe the verdict and judgment in this case to be supported by overwhelming evidence. Plaintiff's evidence was positive and specific, fully corroborated by authentic documentary evidence as well as oral testimony of a probative nature. Defendant's evidence, wholly uncorroborated, was general and vague and in some respects fantastic. Moreover, she obviously is a person of average intelligence and able to read and write. It should be difficult to believe that such a person, while in the full possession of her faculties, signed

an instrument, plainly a note on its face, believing it to be a receipt. In our opinion, no intelligent jury, from the evidence in this case, could come to any other conclusion than the one indicated herein.

Lawsuits, by their very nature, must be decided by the evidence in the case. The general must yield to the specific— the nebulous to the real—the vague to the certain. There is no other way known to man to settle controversies. In the great majority of cases justice is thus obtained.

Defendant presents seven assignments of error. Three have to do with the general charge of the trial court. We have considered each in its relation to the charge as a whole and in the light of the pleadings, evidence, issues and verdict.

In **Western Ohio Railway Co. v. Fairburn, Admr., 99 Oh St 141,** the Supreme Court had the following to say at page 142:

"In determining the question of error in the charge of the trial court to the jury, it is necessary to consider that part of the charge which is claimed to be erroneous, in connection with the entire charge, to determine if the charge as a whole is erroneous; or, if any part thereof is erroneous, whether the same is prejudicial."

The issues made by the petition and answer were simple (1) did the defendant sign the promissory note believing the same to be a receipt rather than a note? (2) Was the defendant indebted to the plaintiff in the sum of $1600.00 at the time?

The defendant claims the emphasized portion of the following instruction to be prejudicial:

"Now, under the law, members of the jury, while you can read and write is chargeable responsibility in signing any document. It is the duty of one who can read or write and who is of average intelligence and has mental ability to understand, to know what he is sigining (and **if he signs in blank then he is charged with the responsibility of whatever is filled in later on)**."

The plaintiff's case is bottomed on the claim that defendant signed a note complete in every detail. Defendant's case rests on the claim that the instrument, when signed, was in blank, she signing what she believed to be a receipt. Clearly then it was one or the other. The jury by its verdict adopted plaintiff's version. Even had they found for the defendant, the legal significance of matter filled in on a blank note would have been of no moment to them since that question patently was not involved in the case. In our opinion, the jury could not have been misled by this instruction and no prejudicial error ensued.

"Generally speaking, error in the instructions given in civil

cases is not ground for reversal unless it is calculated to mislead the jury to the prejudice of the party seeking reversal." **4 O. Jur. 2d, Appellate Review, Sec. 986, pg. 253.**

The other claims of prejudicial error as to the charge of the court have to do with the Burden of Proof on the cross-petition, and Degree of Proof required in proving fraud in connection with the cross-petition. We believe the charges given by the court to be erroneous but not prejudicial under the circumstances existing in this case. The cross-petition asked for the return of money paid plaintiff in satisfaction of the very note that is the subject of controversy here. Manifestly, when the jury found for the plaintiff on the petition and in effect decided that the original judgment on the note was just and the money paid in satisfaction of it proper, the cross-petition asking for the return of that money fell of its own weight and the finding on it had to be for the plaintiff. No consideration of the cross-petition by the jury under the circumstances was required whatsoever. Such was the very instruction given the jury by the trial court when it said:

"If you find that the plaintiff has proved by a preponderance of the credible evidence that his allegations are true, then you will find for the plaintiff, and you will find for the plaintiff on his petition and assess his damages at $2,120.54 which is the amount of the judgment obtained and the interest today; and find for the plaintiff on the defendant's cross-petition."

It is obvious, therefore, that any instruction given the jury with respect to the cross-petition became of no concern to the jury upon its finding for the plaintiff on the petition and played no part in the final determination of this cause.

Defendant complains that she was not permitted to show want of consideration because objections to questions asked of defendant about money belonging to her and kept for her by the plaintiff were sustained. Answers were proffered in the record. These disclose that the answers proffered to these questions were that the plaintiff kept about $1200.00 of her money. We believe that had the answers to these questions been allowed they would have been subject, in each instance, to a motion to strike with instructions to the jury to disregard them since, in effect, they were self-serving conclusions wholly unsupported by other evidence and of no probative value. Moreover, the record shows many instances where defendant was permitted to testify to monies owed her by plaintiff shown by the following:

"Well, up until about July of 1943, my daughter and I al-

ways pooled our earnings; and my home was entered at that time and Mr. Palker told me that I shouldn't leave my money at home, and if I give it to him to handle why it would be safe." (Record p. 25.)

Q. "Did you, over the period from June '43 up until the purchase of this house, did you turn any money over to Mr. Palker?

"A. Well, sometimes I got it back and sometimes he put it in his pocket to keep for me." (Record p. 26.)

"A. Well, I didn't have quite two thousand; and he says, 'Well, you take the money that you have and the little bit more that you need I will put to it because I owe you that much.'—for coming in every day to spend his time there." (Record p. 29.)

"Q. Was that the only bank account that you had?

"A. That is, beside the money that I had at home and what Mr. Palker had." (Record p. 43.)

There was no prejudicial error in this regard.

The defendant also complains that the testimony of a "Lie Detector" operator was erroneously excluded. We believe the court acted correctly in this respect. Courts of Ohio have uniformly excluded such testimony except in the case of an agreement between the parties themselves to allow such evidence. We recognize the fact that this instrument has demonstrated much usefulness in many fields of endeavor. The introduction of its results as evidence in a court of law, however, presents many difficulties. Exponents of it admit some limitations. Inbau, The Lie Detector, 26 B. U. L. Rev. 264 (1946), reports the following estimate based on the experience of the Chicago Scientific Crime Detection Laboratory: (1) the examiner can make a definite and accurate diagnosis in 75% of the cases; (2) the record will be too indefinite in its indications to permit a definite diagnosis in 20% of the cases; (3) the margin of probable error is 5%.

Another experiment which attempted to distinguish between actual guilt of crime and mere guilty knowledge, reports 86% accuracy (39 J. Crim. LL. and Criminololgy, 532) (1948) (5 Vanderbilt Law Review, 1951-1952).

The operator presented in this case was a police sergeant of the City of Shaker Heights with 3-½ years experience with the polygraph. No explanation was permitted the jury as to the scientific principles utilized in the operation of the instrument or its probable accuracy. The questions and answers proffered into the record, out of the hearing of the jury, had to do with the questions propounded the defendant during the test, answers to them, and the operator's interpretation and conclusion with respect to them.

The instrument used as a lie detector is a complicated affair. It is, in fact, a combination of many instruments, that is why it is called a polygraph: "the cardiograph for pulse rate, sphygmograph for blood pressure, the pneumograph for the respiratory movements and the galvanograph to record galvanic reflexes." (5 V. L. R. supra.) Each mechanism automatically registers the physiological reaction of the subject, as indicated above, on a moving graph. The fundamental theory underlying its operation rests on the premise that the voluntary, conscious and intended misstatement of a fact by any person creates an emotional disturbance within one's body that irrepressibly manifests itself by accelerated changes in certain physiological processes i. e. heart beat, blood pressure, breathing and perspiration. From the simultaneous recording of this information, the operator obtains the data on which he bases his conclusion as to whether the person interrogated consciously and intentionally lied in his answer to questions propounded during the test material to the matter under investigation. The polygraph, thus, may establish the fact that the person was lying, but cannot prove that he was not telling the truth, only that he was telling what he believed to be the truth. (Vanderbilt Law Review, supra.)

The test includes three separate entities; the machinery, the operator, and the subject. Were it allowed in evidence, the operator would be subject to cross-examination with respect to each. We assume that his expertness in this case extended to a full knowledge of the method of operation and limit of accuracy of each of the four instruments that comprises the mechanism and that his own qualifications were adequate. But, how would he be legally competent to answer pertinent and searching questions as to the physiological and phychological reactions involved with respect of the subject.

Would he know what part, if any, race, national origin, environment, age, habits, past experiences, temperament, fear, state of health, nervousness, etc., play in the psycho-physiological responses to emotional stimulae of different individuals? These would be relevant questions in the situation and would be perfectly proper to ask since the weight a jury might give to the opinion of the expert may be dependent upon the answers given.

Mr. Keeler, the inventor of the lie detector, believes that until operators are selected by examination and licensing, the tests of his machine should be unavailable for court room use. (Vanderbilt Law Review, supra.)

Certain it is, that, inasmuch as the results of the test depend upon delicate physiological reactions in response to

psychological disturbances within an individual, a court, called upon to pass upon the admissibility of such results as evidence in a case, would have to insist that the person conducting the test and testifying in court concerning it have sufficient training and knowledge to fully understand the significance of these manifestations in the human body as related to the subject under consideration, in addition to a complete comprehension of the mechanism utilized as well as a broad experience in the operation of the instrument.

We find no court of last resort that has ruled favorably in the admission of this character of evidence.

People v. Becker, 300 Mich. 562; Boeche v. State, 151 Neb. 368, 37 N. W. (2d) 593; State v. Cole, 354 Mo. 181; People v. Wallace, 98 C. A. 2d 124.

We hold, therefore, that the results of tests made on an apparatus called the polygraph, and known as a lie detector, are inadmissible in evidence during the trial of a cause in a court of law in its present state of development and operation, general scientific recognition and public acceptance.

Error is also claimed in the refusal of the trial court to give three special charges to the jury before argument. No. 1 of these reads as follows:

"I charge you as a matter of law that if you find the defendant, Mary Ricchetti, did not, at the time of the signing of the note, know in fact that it was a promissory note, your finding must be for the defendant, Mary Ricchetti, on both the petition and the cross-petition."

In our opinion this charge is erroneous. It is not complete on the subject. The defendant contended that the paper she signed was represented to her to be a receipt by the plaintiff. This phase of the case, so important in the matter of the signing of the note, is omitted.

Special charge No. 2 reads:

"I charge you as a matter of law that plaintiff, J. L. Palker, has the burden of proof to satisfy you by a preponderance of the evidence that the instrument in question here was given for the consideration stated, $1600.00. This burden does not shift to defendant at any stage of the case, and although such instrument in the hands of J. L. Palker is deemed prima facie to have been issued for a valuable consideration, yet the burden is always upon plaintiff, J. L. Palker, to satisfy you that upon all of the evidence the consideration stated in the instrument was in fact the consideration for it."

This charge, likewise, is not complete on the subject and therefore erroneous. It fails to say to the jury that while the burden of proof on the question of want of consideration

remains with the plaintiff throughout the case, the burden of proceeding with the evidence shifts to the defendant once the plaintiff makes out a prima facie case by the introduction and acceptance of the note in evidence.

In **State ex rel. v. Hoff, 140 Oh St 236, at page 239,** the Supreme Court said:

"In such a case the plaintiff may rest without offering any evidence to prove consideration for reasons which are obvious. A promissory note imports consideration and and when execution and delivery are admitted or shown and the note offered in evidence a prima facie case is made out. The burden to go forward with respect to the defense of want of consideration is upon the defendant but the burden of proof rests continuously upon the plaintiff."

In re **Estate of Kennedy, 82 Oh Ap 359, parag. 3,** of the syllabus reads:

"A note imports consideration and where the execution and delivery of a note are admitted or shown and the note produced in evidence, a prima facie case is made out and the burden to go forward with the defense is upon the defendant, but the burden of proof rests upon the plaintiff throughout the trial and does not shift."

Special charge No. 3 reads:

"I charge you as a matter of law that if you find that defendant, Mary Ricchetti, did not voluntarily deliver to J. L. Palker the document in question here, knowing it to be a promissory note, then your finding must be for defendant, Mary Ricchetti, on both the petition and the cross-petition."

This charge is similar to that presented in No. 1, with the added statement "did not voluntarily deliver * * *." There was no evidence as to the latter. It was clearly erroneous and properly refused by the trial court. **39 O. Jur. 1030.**

The defendant claims error on the part of the court in permitting plaintiff's counsel to testify. She sets forth Canon 19 of the American Bar Association Canons of Professional Ethics, which reads as follows:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

The facts of this case between plaintiff and defendant were in sharp conflict. Plaintiff testified that he and defendant were in his lawyer's office when the promissory note was filled out and signed by the defendant. This became the most

crucial fact of the entire case. The ends of justice, it seems to us, demanded that any person having knowledge affecting so vital an issue in a case be required to testify. For a lawyer not to testify under such circumstances, would be thwarting the very purpose prompting his efforts in the cause under consideration. We feel there was neither impropriety nor error in this respect.

From a consideration of the entire record in this case, we feel substantial justice has been done defendant and that this case should be affirmed. **Sec. 2309.59 R. C.**

Judgment affirmed. Exceptions noted. Order see journal.

HURD, PJ, SKEEL, J, concur.