THE STATE OF OHIO *v.* JAROSZYK.

(Nos. 2171 and 2176—Decided February 22, 1973.)

Common Pleas Court of Carroll County.

*Mr. Rudolph Battista*, prosecuting attorney, for plaintiff.

*Messrs. Wise & Gutierrez*, for defendant.

PERKINS, J.   On April 5, 1971, the defendant was found guilty of the crime charged.   An appeal was prosecuted to the Supreme Court of Ohio, which upheld the trial court. A motion for a new trial based on newly discovered evidence was filed October 27, 1972, pursuant to R. C. 2945.80.

The motion is accompanied by three affidavits and a polygraph test taken by the defendant, dated October 26, 1972.

The defendant moves for a new trial based upon the three affidavits and the polygraph report.   The state opposes the motion.

First, the motion is filed more than 120 days after April 5, 1971.   Therefore, the court is bound by that part of R. C. 2945.80, which reads as follows:

"If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such mo-

tion shall be filed within three days from an order of the court finding he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."

The three affidavits have to do with prospective witnesses Vladimir Pellich, Stephen Hawryluk, and Marie Tomazewski. The court reviewed the testimony in the trial of the case and finds that all of the above named potential witnesses were known to the defendant and his counsel and their names were mentioned in other testimony. Therefore, as to the potential witnesses for whom the three affidavits were filed, the court is of the opinion that the defendant was not unavoidably prevented from the discovery of their evidence.

The polygraph test is dated October 26, 1972, and so the court must make a judgment as to whether the defendant was unavoidably prevented from the discovery of this evidence within 120 days after the date of the verdict.

The defendant's counsel argues that at the time of the trial, in April 1971, the law of Ohio precluded the introduction of the results of polygraph tests. Therefore, he concludes, it would have been a vain act of the defendant to seek to introduce a polygraph test at that time. The defendant, through his counsel, claims further that as a result of two United States District Court cases, the results of a polygraph test can now be admitted. The court is vested with a large amount of discretion in the application of this statute. It also feels that statutes should be construed in their practical and not in their technical sense.

If the defendant at the time of trial had sought to introduce the results of the polygraph test to prove his innocence, the court would not have allowed the introduction because, in the court's opinion, the law of Ohio does not permit such evidence. The defendant now claims that because of two United States District Court opinions such evidence is admissible. The court will discuss whether this is so or not, later. However, it would have been a vain attempt for the defendant to have tried to introduce the evidence at the time of trial.

Therefore, the court is of the opinion that the defendant was unavoidably prevented from presenting the evidence—namely, the conclusion of C. B. Wilkinson as to the results of the polygraph test—within the 120 days period required by R. C. 2945.80.

The exact question at issue here is as follows: What is the law of Ohio as to the admission of the polygraph test *by the defendant to prove his innocence?*

Because of the importance of the question, the court requested of and received from the Ohio State Bar Association's Automated Research Corporation a complete printout of all the reported cases in Ohio in which a polygraph was involved. The printout contained 33 citations. Three were cases where the Supreme Court simply decided without an opinion that there was no debatable constitutional question. Twelve were civil cases and therefore not in point. Eighteen were criminal cases.

Of the eighteen criminal cases, only 4 were opinions of the Supreme Court of Ohio.

*State* v. *Dobbins* (1960), 171 Ohio St. 40, deals with a case where the state, in rebuttal, offered testimony concerning a lie detector test given to the defendant, and the defense attacked such reference. The syllabus turned on another matter, but the court said, at page 43:

"The defendant has raised a question concerning the propriety of testimony given on behalf of the state in rebuttal concerning the giving of a lie detector * * * test to the defendant. We have read the record of this testimony resulting from a question raised by the defendant himself during the course of the trial, and we find nothing in it prejudicial to the defendant."

So, this case does not deal with the question outlined here.

*State, ex rel. Sheppard,* v. *Koblentz* (1962), 174 Ohio St. 120 (the famous Sheppard case), was not a criminal case, but one in mandamus, for an order requiring the Chief of the Division of Correction to allow Sheppard, already convicted and incarcerated, to take a polygraph test. The court stated, at page 122, the following:

"There is no clear legal duty on the part of the Chief of the Division of Correction of the Department of Mental Hygiene and Correction to permit a prisoner to subject himself to hypnosis or a polygraph test in order to demonstrate his innocence of a crime for which he was convicted; and, the allowing of such tests being strictly within the discretion of such officer, a writ of mandamus does not lie to compel such tests."

The court decided in this case that the Chief of Correction had sole discretion in determining whether or not he would allow such a test.

*State* v. *Holt* (1969), 17 Ohio St. 2d 81, was a case in which a detective volunteered that the defendant had taken a lie detector test and had failed. The trial court immediately stopped the testimony and instructed the jury to disregard the remark. The Supreme Court held that the remark was not prejudicial—agreeing, apparently, that it was not admissible.

In *McMullen* v. *Maxwell* (1965), 3 Ohio St. 2d 160, the plaintiff sought a writ of habeas corpus because of a suppression of evidence by the state, at his trial. The results of a polygraph test, which he failed, were introduced at trial, but he had voluntarily agreed to take the test and this was not an issue in the case.

Therefore, it is clear to this court that the Supreme Court of Ohio has not directly ruled on the question raised here—the admissibility of polygraph test results offered by a defendant.

There were twelve cases in the Court of Appeals in the printout. In only two cases do we find some clear authority on the specific question raised by this case. The first is *State* v. *Hegel* (1964), 9 Ohio App. 2d 12. The syllabus reads as follows:

"The admission of testimony pertaining to a defendant's refusal to submit to a polygraph test constitutes *prejudicial error*." (Emphasis added.)

At page 13, the court stated:

"It is universally recognized that results of lie detector tests are not admissible in evidence by either a defend-

ant or the prosecution for the purposes of establishing the innocence or guilt of the accused. 23 A. L. R. 2d page 1308.''

In the *Hegel* case, the admission was sought by the prosecution. And so, the statement, insofar as the admission by the defendant to show his innocence is concerned, is not necessary to the decision of the case. But this does afford a clear cut statement as to the general rule in Ohio.

The Court of Appeals in *Hegal* quoted with approval the reasons for disallowing such polygraph evidence as was discussed in *State* v. *Mottram*, 158 Me. 325, 184 A. 2d 225. The court in the *Mottram* case said, at page 330, 184 A. 2d at 228:

''In addition to refusing to admit the results of a lie detector test, the courts have also denied admission in evidence of the refusal or willingness of a respondent to take the test. The underlying reason for this rule rests in the belief that the fact finder would be unable to assess the evidence without assuming a nonexistent value for lie detector tests in general.

''The worth of evidence of refusal or willingness to take a lie dector test rests, in our opinion, upon a general acceptance of the worth of evidence of the result of such a test. The result does not have the accuracy entitling it to admission in evidence. It follows that a refusal or willingness to take a test of which the result would have been without value in evidence likewise has no value for the fact finder.''

The second Court of Appeals case is *State* v. *Stamper* (1948), 53 Ohio Law Abs. 414.

In this case, the defendants were convicted of armed robbery in what was, apparently, a second trial of the crime. They appealed, assigning the refusal of the trial court to admit evidence relating to a lie detector experiment to which the defendant Stamper had been subjected as one of the errors.

The court in that respect stated as follows, at 416:

''* * * It appears that prior to a former trial of this case, the defendant had submitted himself to a 'lie detec-

24

tor' to determine his veracity and at the first trial an expert witness was placed on the stand who testified to the use of the lie detector in order to establish its reliability in determining whether the truth is being told. On objection [apparently in the first trial], the court at the first trial sustained the State's objection and the witness was not permitted to testify as to the results of the test as applied to appellant Stamper.

"On this second trial, the appellant sought to use a transcript of the testimony of this witness on the ground that the witness was not available because he was out of the jurisdiction of the court. The court sustained the State's objection. This ruling of the court could not possibly be prejudicial to appellants. If the whole transcript had been read to the jury, it would have proven nothing other than a 'lie detector' was reliable. It would not have proved that the appellant Stamper's denial of guilt was the truth because there was not testimony in the transcript of the testimony of the witness on that subject."

This case therefore turned on the rather narrow question of whether the exclusion was prejudicial. There is a strong implication, however, that the testimony was excluder because Ohio follows the general rule that the results of a lie detector test are inadmissible even when presented in evidence by the defendant in a criminal case.

In most of the other Courts of Appeals cases, comments on the use of a lie detector by the state were either held to be error, or the comments were considered to have been made under such circumstances as not to be prejudicial.

Considering all of these cases, it is this court's true opinion that available Ohio law follows the rule of excluding the results of polygraph tests even where they are offered by the defendant to prove his innocence. However, there is no Ohio Supreme Court pronouncement drawn on the subject.

Reference to the Criminal Law Reporter and other sources shows that where courts of last resort in other states have decided the question, they have held the results

of a polygraph test to be inadmissible, either by the state to prove guilt or by the defendant to prove innocence, without the consent of both sides. See *Skinner* v. *Virginia* (1971), 212 Va. 260; *State* v. *Ross*, Court of Appeals of Washington, decided June 7, 1972, 11 Crim. L. Rptr. 2333, approving *State* v. *Valdez* (1962), 91 Ariz. 274, 371 P. 2d 894.

Pennsylvania, Alaska and Michigan have also excluded results of polygraph tests where they are offered by the defense. See 9 Crim. L. Rptr. 2203; 2 Crim. L. Rptr. 2379; 8 Crim. L. Rptr. 2155.

The defendant cites *United States* v. *Zeiger*, decided October 10, 1972, D. C. Circuit, and *United States* v. *Ridling*, decided October 6, 1972, E. D. Michigan. The court need not consider the *Zeiger* case because the United States Court of Appeals reversed the order made by the United States District Court. (12 Crim. L. Rptr. 2135.) In the *Ridling* case, a criminal action was brought for perjury. In other words, the indictment was based upon a failure to tell the truth. The *Ridling* Court explored the whole field thoroughly. It acknowledged that judicial opinions do point to the exclusion of tests because of questions as to the reliability of the polygraph. The court likened the polygraph to other types of scientific evidence, such as finger prints, blood tests for alcohol, voice recordings and radar. The court agrees that officials have not yet developed adequate policing techniques. Taking everything into account, the court does say in *Ridling* that the polygraph test should be allowed.

This court does not think the two cases cited by the defendant change the applicable Ohio law. One, of course, was reversed and the other, a perjury case, gave a specific but unrelated reason for allowing the test.

The court can only conclude that the cases in other states and the ones available to the court in this state hold that such evidence should be excluded even where it is offered by the defendant to prove his innocence. In stating this, however, the court wants to make it clear that the Supreme Court of Ohio has never ruled on this subject.

I have already stated what the law is. And yet, the court takes judicial notice of the fact that polygraphs are in common use. Therefore, either the courts are woefully behind the times, or there is something bad in this lie detection process that does not meet the eye.

Although this court is not required to ask why, the court was naturally curious and did find that in some scientific circles that there is a question about the assumed reliability of polygraph tests. An interesting article is found in 70 Yale Journal (Apr. 1961), beginning on page 694 and continuing through page 730.

The writer noted the curious position of the polygraph. On the one hand, it appeared to have a varied use, and, on the other hand, its results were excluded at trial. In one of the articles, on page 727, the writer contended as follows:

"The degree of interpretation required by the lie-detection process is high, certainly higher than is admitted; and the techniques of the process enhance the possibility of error from interpretation. Lie detector tests are now comparable to chemical tests; the latter are based upon firmly established relationships and are, hence, more routinized in procedure. Chemical tests can be carried out with precision by a technician—mechanically, even though the moving parts of the mechanism are human.

"Lie detection requires at least as much interpretation as tests performed by clinical psychologists or various medical specialists. It differs from those tests in three ways: First, it claims that it can diagnose a *particular* item of behavior. No reputable psychologist or psychiatrist would assert a *general* ability to diagnose, from tests or interviews, whether an individual had sometime in the past performed a specific act. He would judge only tendencies to behave. Second, lie-detector examiners who are called upon to make this most difficult judgment usually have police backgrounds; rarely, if ever, do they have the education and training required of physiological and medical specialists. Lie detection requires the making of physiological, psychological and sociological judgments which even practioneers in those fields would draw only with caution. Third,

the chance of distortion is magnified by the uncontrolled psychological response of the individual examiner. Considerable naivete is shown regarding this factor, and the minimal precautions that are actually taken to offset examiner bias would be appropriate only for tests as precisely routinized as chemical tests."

In another part, it was said:

"The scientific basis for lie detection is questionable. There seems to be little evidence that upholds the claim to a regular relationship between lying and emotion; there is even less to support the conclusion that precise inferences can be drawn from the relationship between emotional change and physiological response." (Page 727.)

In *Parker* v. *Friendt*, 99 Ohio App. 329, a civil case, there was a claim of error in excluding tests made by a polygraph. The exclusion was appealed to the Court of Appeals. The Court of Appeals brought out two of the questions which were raised in the Yale Law Journal article and said, at 337:

"Mr. Keeler the inventor of the lie detector believes that until operators are selected by examination and licensing, the tests of his machine should be unavailable for court room use."

So, whatever is found in this case, it appears that the courts may not be as far behind the times as is sometimes thought on this question. They are concerned about the trial process.

What would happen to trials if the bar was lowered so as to admit polygraph results generally? Would the admission of a test administered to a defendant not lead to the admission of tests performed on witnesses for the state? Then could any party demand, under discovery, that an opposing witness be tested? Would the emphasis of the trial then shift from testimony about the facts to testimony about who is telling the truth about the facts. Could witnesses not parties be compelled to submit to a test? Would the jury tend to believe the tests and not consider the facts?

The conclusion of the court is that the motion for a new trial should be denied and this is the judgment of the court.

*Motion denied.*