COMMONWEALTH *vs.* JOHN H. PATTERSON.

Middlesex. January 12, 1976. — February 9, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Evidence,* Relevancy and materiality, Competency, Business record, Polygraphic test. *Practice, Criminal,* New trial.

At a criminal trial, the judge did not err in admitting in evidence a written application the defendant had made for a license to carry firearms where the information on the application was relevant to the identification of the defendant. [72-74]

A criminal defendant who claimed as an alibi that he had been engaged in a long distance telephone call at the time of the crime was not entitled to a new trial by the judge's refusal to admit in evidence

a list of long-distance calls for which the defendant had been billed by the telephone company where there was no proof that the document was a record made in the regular course of business and where the document would not have indicated the time of day the call was received and would have been cumulative of extensive other evidence already received. [75-76]

There was no error in a judge's denial of a criminal defendant's motion for a new trial on the basis of polygraph tests of the defendant and two alibi witnesses after his conviction, where the defendant knew the results of those tests before requesting the court to consider them and otherwise failed to meet the conditions for use of polygraph evidence delineated in *Commonwealth* v. *A Juvenile,* 365 Mass. 421 (1974). [76-78]

Verdicts against a defendant on charges of assault and battery by means of a dangerous weapon, kidnapping, the commission of an unnatural act, and rape were not so against the weight of the evidence as to warrant a new trial despite the judge's remark that he was "surprised at the verdict." [78-79]

INDICTMENTS found and returned in the Superior Court on March 6, 1974.

The cases were tried before *Hallisey, J.*

*F. Lee Bailey* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed (A) from separate convictions of assault and battery by means of a dangerous weapon, kidnapping, the commission of an unnatural act and rape and (B) from an order denying his motions for a new trial. The assignments of error (G. L. c. 278, § 33D) which have been argued are (1) the admission and (2) the exclusion of certain evidence during the course of the trial, (3) the trial judge's refusal to grant an evidentiary hearing on the admissibility of certain polygraph testimony which was proffered by the defendant's present counsel[1] during the course of the hearing on the motions for a new trial, and (4) the judge's refusal to set aside the verdicts on the ground that they were against the weight of the evidence.

There was ample evidence from which the jury could have found the following facts. In the evening of July 27,

---

[1] The defendant was represented by different counsel during the trial.

1973, the victim of all four offences, while attempting to hitchhike from Boston to Newton, accepted a ride in a car driven by a man who was accompanied by another man (passenger). When the car arrived in Newton and the victim asked to be let out, the passenger produced a revolver which he pressed against the victim's ribs and with which he threatened her. The driver joined in the threats. The car was driven to a remote area in the country which was then unknown to the victim and where both men proceeded to perform unnatural acts on the victim and to rape her. The car was then driven back to Newton, where the victim was let out and immediately called the Newton police. After reviewing numerous mug shots in the possession of the Framingham police the victim tentatively identified the defendant as the driver of the car. With the aid of various police officers to whom she had described things which she had observed along the route traveled by the car the victim was able to identify the scene of the sex offences as a place on an electric transmission line right of way in Sherborn. Shortly thereafter she made a positive pre-arrest identification of the defendant at his place of work at an auto body repair shop in Natick.

Neither the car nor the passenger was ever found; no gun was produced at the trial. The defendant relied on an alibi; he and seven witnesses called by him all testified to his having been in his apartment in Framingham throughout the period during which all the various offences were committed. According to the defendant and his witnesses, he had been engaged in a long distance telephone call which was not concluded until about the time when the jury could have found that the victim arrived in Sherborn.

1. The first assignment of error which we consider is the one directed to the admission in evidence of a written application which the defendant had made in 1972 to the chief of police in Sherborn for a license to carry firearms.[2]

---

[2] See G. L. c. 140, § 131, as amended, which contains the general authority for the issuance of a license to carry a hand gun. Such a

Commonwealth *v.* Patterson.

The circumstances of the admission were as follows. A Sherborn police officer called by the prosecution testified on direct examination to his having assisted the victim in locating the right of way where the sex offences were alleged to have occurred, described the right of way as being adjacent to certain conservation lands, characterized it as a "lovers-lane" type of place, and testified that a considerable amount of hunting and shooting was done in the area. The officer then testified that he knew the defendant, that he had seen him at the Sherborn police station in 1972, and as to certain of the defendant's physical characteristics in 1972. The defendant objected to a question as to the defendant's purpose in being at the police station. The prosecutor advised the judge at the bench that he expected the witness to answer that the defendant's purpose had been to apply for a "pistol permit." The defendant thereupon withdrew his objection, and the officer answered the question as expected. The officer then testified as to a Sherborn address given by the defendant in the application, that the address was less than a mile from the right of way, and that no license had been issued to the defendant. In answer to a question put to him on cross examination the officer testified that an applicant for a permit was required to submit photographs of himself.

On redirect the officer testified to his duties in connection with the issuance of licenses to carry firearms and as to the types of information called for on the "standard form" of license (see n. 2, *supra*). The prosecutor then offered what appears to us to be such a form, which bears, among other things, the defendant's name, the Sherborn address previously testified to by the officer, and a photograph of a white male. The typed inscriptions on the form state the applicant's place of birth as Framingham, his occupation as "auto body repair," and the reason for issu-

---

license is to be issued on a form furnished by the Commissioner of Public Safety and "shall contain blank spaces for such information as the commissioner deems necessary for proper identification of the licensee."

ing a license as "sporting and target." The form bears the
handwritten words "John Henry Patterson" in the space
provided for the signature of the applicant, but the space
provided for the signature of the licensing authority is
blank. The prosecution offered the form on the issue of
the identification of the defendant, who objected on the
ground of relevance and that the form was "highly prej-
udicial." The form was admitted subject to the defend-
ant's exception. There was no request for a limiting in-
struction.

We think the information contained on the form was
relevant to the issue of the identification of the defendant
as one of the persons who had attacked the victim. It was
undisputed that the defendant lived in Framingham at
the time of the commission of the offences. The jury could
conclude from the photograph attached to the form, from
the physical description of the applicant set out therein
and from the prior testimony of the police officer that the
defendant had lived in Sherborn prior to the time of the
offences at an address not far from where two of them
had been committed and was thus likely to know of the
existence and character of that place.

The present case is not an instance in which the de-
fendant was shown to have committed a prior offence
(contrast *Commonwealth* v. *Stone,* 321 Mass. 471, 473-
474 [1947]); there is nothing illegal about the mere act
of applying for a license to carry firearms. The defendant
argues that that act is suggestive of a predisposition to
carry a hand gun such as the jury could have found was
used in this case. We think the jury could have concluded
with equal facility that the defendant was unwilling to
carry a hand gun without being properly licensed. By the
time the form was offered the defendant had already with-
drawn his objection to the officer's testimony concerning
the defendant's having made the application. We think
the evidence contained on the form was of sufficient rele-
vance to outweigh the minimal prejudice, if any, which
might have flowed from admitting the form in evidence.
See *Commonwealth* v. *Blow,* 362 Mass. 196, 201 (1972).

2. It was important to the defendant's alibi that he be able to satisfy the jury that he had been in his apartment in Framingham throughout the evening in question and that during the most critical portion of the evening he had been engaged in a lengthy telephone conversation with a friend who was then in Tucson, Arizona, and who had initiated the call on a collect basis. Seven witnesses called by the defendant testified to the fact of such a conversation during the critical period; four of the defendant's witnesses (including the caller) testified to the identity of the caller; the person with whom the defendant shared the apartment testified to the call's having been initiated and received on a collect basis. Following that testimony the defendant offered in evidence what his apartment mate had described as a list of long-distance calls for which the defendant had been billed by the telephone company for the use of the telephone listed to him and what a representative of the telephone company characterized as a "customer copy of long-distance telephone calls." It appeared from the testimony of that representative that whatever records the telephone company might have had concerning any such call had long since been destroyed by it in the regular course of its business. If admitted, the document would have tended to show the receipt by someone in the apartment of a collect call from Tucson on the date in question. The judge excluded the offer, subject to the defendant's exception.

The defendant argued, and continues to argue, for the admissibility of the document as if the only question involved were one of satisfying the best evidence rule. See *Fauci* v. *Mulready*, 337 Mass. 532, 539-543 (1958); *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 219 (1964). More to the point is the fact, noted by the trial judge in the course of argument within the hearing of the jury, that there was a complete absence of any proof that what was offered was a copy or a duplicate original of some accounting entry, writing or record which the telephone company had made in the regular course of its business, as required by G. L. c. 233, § 78. Compare *Bendett* v. *Bendett,* 315

Mass. 59, 61-62 (1943); *United States* v. *Blake,* 488 F. 2d 101, 104-106 (5th Cir. 1973). Contrast *Commonwealth* v. *Monahan,* 349 Mass. 139, 170 (1965); *Commonwealth* v. *Baker,* 368 Mass. 58, 84 (1975); *United States* v. *Miller,* 500 F. 2d 751, 753-755 (5th Cir. 1974). The document (which was marked for identification and is before us) would not have indicated the time of day when the call was received at the apartment and would have been cumulative of extensive other evidence already received.

The defendant thereafter identified the document as "my copy of the bill I received from the telephone company" and testified that it refreshed his recollection as to the fact of his having been engaged during the critical period in a telephone conversation with a person then in Tucson who had called on a collect basis. The prosecutor in his closing argument stated that he had "no doubt" that there had been a call from Tucson but argued for the position that the call had been concluded in sufficient time for the defendant to have participated in all the offences charged. The document would not have shed any light on the time of day when the conversation took place, and we are not persuaded that its exclusion requires a new trial.

3. We pass the question on whether an exception was saved (see *Commonwealth* v. *Lauria,* 359 Mass. 168, 172 [1971]) to the denial of the defendant's original and supplemental motions for a new trial.[3] Paragraph 4 of the supplemental motion asserts that following the trial the defendant had been tested on a polygraph and that the results of that examination completely exonerated the defendant of all the charges on which he had been indicted. Paragraph 5 of that motion asserted that two of the defendant's alibi witnesses had also been tested on a polygraph following the trial and that the results of those

---

[3] The motions need not be considered separately because the supplemental motion repeated all the grounds of the original motion filed by trial counsel. Only two grounds of the supplemental motion have been argued to us.

examinations verified the truth of their statements concerning the defendant's whereabouts on the night the crimes were alleged to have been committed. Attached to the motion were copies of what would appear to be separate reports prepared at the request of defence counsel by two persons who, the defendant would have us infer, are experts in the proper use and function of the polygraph. One report is concerned with an examination of the defendant, and the other with examinations of the two witnesses. It is not clear from a reading of the motion itself whether the defendant's purpose was (a) to ask the judge to consider the reports in determining whether the verdicts were against the weight of the evidence (which was one of the stated grounds of the motion) or (b) to secure a new trial at which the testimony of the authors of the reports could be offered for the consideration of the jury.

At the hearing on the motion counsel for the defendant represented (and the prosecutor agreed) that prior to trial the defendant had voluntarily submitted to a polygraph test conducted by an expert selected by the prosecution, that the results of that test had been "inconclusive," that the prosecution had thereafter offered the defendant an opportunity to undergo a second polygraph test, but that the defendant had not accepted the offer.[4] Counsel for the defendant argued for the reliability of the polygraph and requested an evidentiary hearing on the testimonial qualifications of the authors of the reports attached to the motions. See Commonwealth v. A Juvenile, 365 Mass. 421, 429-430 (1974). The judge made no reference to that request in his order denying the motions for a new trial, but it seems likely (and the case has been argued to us on the basis) that the judge regarded the availability of the polygraph as other than newly discovered evidence. See State v. Jaroszyk, 39 Ohio Misc. 19, 20-27 (1973), aff'd

_____

[4] It is not clear from the record whether the events related occurred before or after the decision in Commonwealth v. A Juvenile, 365 Mass. 421, on June 12, 1974. The trial of this case commenced on October 24, 1974.

39 Ohio App. 2d 35, 37-38 (1973), cited by the judge in his order of denial. See, generally, on the subject of newly discovered evidence, *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 542-543 (1971).

We think there were more immediate reasons for denying the request for an evidentiary hearing on the testimonial qualifications of the authors of the reports and for refusing to allow the supplemental motion so far as it purported to be grounded on polygraph evidence. The defendant was not entitled to offer evidence of the results of the tests conducted by his supposed experts because he already knew those results before he made his request to the court for leave to proceed with polygraph evidence. *Commonwealth* v. *A Juvenile,* 365 Mass. at 431-432, and n. 8. At no time did the defendant meet or offer to meet the conditions surrounding the use of such evidence which were delineated in the *Juvenile* case.

We hold that the supplementary motion was properly denied so far as it purported to be grounded on polygraph evidence. In so holding we are not to be understood as expressing any opinion on the circumstances in which polygraph evidence might be employed in support of a motion for a new trial in a criminal case, or on whether polygraph test results might ever be admissible to support or impeach a witness who is not the defendant in a criminal case. We intend no intimation on either of those points.

4. To the extent that they were grounded on the proposition that the verdicts were against the weight of the evidence the motions for a new trial were "addressed to the discretion of the judge, and his action in denying ... [them] must stand unless there was a clear abuse of discretion." *Commonwealth* v. *Smith,* 357 Mass. 168, 181 (1970). We have carefully reviewed all the evidence and find no such abuse. The judge's remark that he "was surprised at the verdict ... with the substantial number of alibi witnesses" can hardly be equated with a statement that in his judgment the verdicts were "so greatly against the weight of the evidence as to induce in his mind ... [a]

4 Mass. App. Ct. 79                                       79

Mac-Rich Realty Constr. Inc. *v*. Planning Board of Southborough.

strong belief that ... [they were] not due to a careful consideration of the evidence, but ... [were] the product[s] of bias, misapprehension or prejudice." *Commonwealth* v. *Gricus,* 317 Mass. 403, 406 (1944), and cases cited.

The order denying the motions for a new trial and the judgments are affirmed.

*So ordered.*